UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALBERTO SOTO-LARA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-10498-WGY |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM AND ORDER

YOUNG, C.J.                                                May 3, 2005

Alberto Soto-Lara ("Soto-Lara"), acting pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Soto-Lara's petition is based on a claim of ineffective assistance of counsel. In support of this claim, Soto-Lara asserts that his counsel improperly failed to raise and argue two issues: (1) that the government breached its plea agreement, and (2) that his conviction violated the double jeopardy clause.

I. **BACKGROUND**

On October 25, 2000, while serving a sentence for a conviction in Rhode Island, Soto-Lara was indicted by a federal grand jury sitting in the District of Massachusetts for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 ("Count One") and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) ("Count Two"). District of

Massachusetts Presentence Report of Jan. 3, 2002 ("Massachusetts Presentence Report") at 1.

On August 17, 2001, Soto-Lara appeared before this Court and, pursuant to a plea agreement with the government, pled guilty to Count One of the indictment. Id. at 2. On January 10, 2002, based upon the Court's conclusions as to the drug quantity attributable to him, his role in the offense, and his criminal history, Soto-Lara was sentenced to a 168-month term of incarceration followed by a 36-month term of supervised release. Tr. of Disposition of Feb. 27, 2002 ("Tr.") at 27.

Soto-Lara appealed this sentence, claiming that the Court erred by increasing his offense level pursuant to section 3B1.1(a) of the United States Sentencing Guidelines on the grounds that he was a leader or organizer of criminal activity involving five or more participants. United States v. Soto-Lara, 60 Fed. Appx. 834, 834 (1st Cir. 2003). The Court of Appeals affirmed Soto-Lara's sentence, ruling that there was in the record data sufficient to support his enhanced role in the offense and no clear error. Id. at 834-35.

Soto-Lara brings this petition pursuant to 28 U.S.C. § 2255 and asserts that he was deprived of his Sixth Amendment right to counsel.[1] Soto-Lara claims that his counsel was ineffective for

---

[1] Failure to raise a claim of ineffective assistance of counsel on direct appeal does not bar the claim from being brought in a later, appropriate collateral proceeding. Massaro

2

failing to argue (1) that the government breached its plea agreement at his sentencing hearing, and (2) that this indictment subjected him to double jeopardy because it alleged criminal conduct that was part of a cocaine conspiracy for which he had been previously convicted.

## II. DISCUSSION

The burden of demonstrating ineffective assistance of counsel rests on the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984) (noting the defendant must demonstrate that the performance of counsel was "deficient," "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that such "deficient performance prejudiced the defense"). Under the standard outlined in Strickland, the petitioner must show that (1) counsel's representation "fell below an objective standard of reasonableness," Id. at 688, and (2) "but for counsel's . . . errors, the result of the proceeding would have been different," Id. at 694. See also United States v. Wilkerson, 251 F.3d 273, 279 (1st Cir. 2001) (articulating the Supreme Court's two-prong analysis in Strickland).

---

v. United States, 538 U.S. 500, 504 (2003) (explaining that requiring a defendant in a criminal matter to bring an ineffective assistance of counsel claim on direct appeal does not promote the conservation of judicial resources nor the importance of the finality of judgments). Soto-Lara's claim is now properly before this Court.

3

The <u>Strickland</u> standard is a difficult hurdle to overcome, as courts "indulge a strong presumption that counsel's conduct falls within [a] wide range of reasonable professional assistance." 466 U.S. at 689. Failure to raise a meritless legal argument falls well within this wide range of reasonable assistance and thus does not constitute ineffective assistance of counsel. <u>Acha</u> v. <u>United States</u>, 910 F.2d 28, 32 (1st Cir. 1990) (noting that counsel was under "no obligation" to raise meritless claims); <u>United States</u> v. <u>Victoria</u>, 876 F.2d 1009, 1012-13 (1st Cir. 1989) (explaining that failure to raise meritless claims does not indicate ineffective assistance of counsel as such claims have no effect on the result of a trial). The preliminary determination must therefore address whether the alleged breach of the plea agreement and double jeopardy arguments have merit.

### A. Alleged Breach of Plea Agreement

Soto-Lara entered into a plea agreement with the government in which the government, in exchange for his guilty plea, agreed to the following:

> The U.S. Attorney agrees to dismiss Count Two of the Indictment following imposition of sentence. . . .
>
> Based on Defendant's prompt acceptance of personal responsibility for the offense of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

4

Plea Agreement of July 26, 2001 ("Plea Agreement") at 1-2. The government fulfilled these obligations and Soto-Lara does not take issue with them.

The government also stated in the plea agreement the position it would take during sentencing with regard to the calculation of the sentencing guidelines as applied to Soto-Lara:

> Base Offense Level:
> The U.S. Attorney takes the position that at least 5 and not more than 15 kilograms of cocaine are attributable to Defendant pursuant to U.S.S.G. § 2D1.1.
> Role in the Offense:
> The U.S. Attorney takes the position that Defendant is an organizer and leader, and consequently a two level upward adjustment is appropriate pursuant to U.S.S.G. § 3B1.1(c).

Id. at 2. It is the government's position with regard to his role in the offense with which Soto-Lara takes issue. Mem. of Law in Supp. of Pet'r Mot. Under § 2255 ("Pet'r Mem.") [Doc. No. 3] at 4.

A plea agreement is a binding agreement in which the government makes promises in exchange for a defendant's guilty plea. United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004) Failure of the government to perform on its promises is a breach of the plea agreement. Id. (noting the importance of performance of a plea agreement given that defendant has waived basic constitutional rights in reliance thereon); Correale v. United

States, 479 F.2d 944, 947 (1st Cir. 1973) ("We are mindful . . . that a defendant entering into a plea agreement with the government undertakes to waive certain fundamental constitutional rights; because of that waiver, the government is required to meet the most meticulous standards of both promise and performance."). Here, the government, by taking these positions in the plea agreement, made no promise affirmatively to recommend these positions to the Court at sentencing. Therefore, the government's failure to recommend at sentencing that Soto-Lara's role in the offense warrants a two-level upward adjustment does not constitute failure to perform on any promise and is not a breach.

Soto-Lara contends, however, that the government breached the plea agreement by taking a position during sentencing that was inconsistent with the position it agreed to in the plea agreement. Pet'r Mem. at 12 (arguing that the government took an "adversary position"). The relevant portion of the sentencing hearing is as follows:

> COURT: I do find by a fair preponderance of the evidence that Mr. Soto-Lara is a leader or organizer of a cocaine distribution organization that involved five or more participants. And they include himself, Lopez-Fernandez, Garcia-Castro, and Ramone. So I add four levels.
>
> [COUNSEL FOR DEFENDANT]: [Y]ou find that the role enhancement is proper because you say that Mr. Soto-Lara was the leader or organizer of five or more

6

>       participants. . . . But you only identified four,
>       including the defendant himself.
>
>       [PROSECUTOR]: If I may help out on that . . . I think
>       there are indisputably actually six participants in the
>       organization. One being Soto-Lara, one being Junior
>       Carmona, one being Garcia-Castro, one being Apolinar
>       Lopez, one being Ramone, and one being Ganaliel Pena.

Tr. at 22.

At the sentencing hearing, the government brought to the Court's attention the individuals it believed were involved in the conspiracy. The government at no time advocated that a four-level increase be imposed rather than a two-level increase, nor did it advocate any position that was inconsistent with the plea agreement. The government simply provided information to the Court that was relevant to the Court's sentencing decision. "It was not only appropriate, but also in conformity with the government's obligations for it to provide the sentencing court with information as to the material facts surrounding the offense." United States v. Riggs, 347 F.3d 17, 19 (1st Cir. 2003). Thus, the government complied with both its duty to bring all relevant information to the Court's attention as well as its duty to perform on all promises contained within the plea agreement. Accordingly, the breach of plea agreement argument is without merit and counsel would not reasonably be expected to raise it.

Even assuming arguendo that there was a breach and that

7

counsel did err by failing to raise such an argument, counsel was not ineffective because this error did not affect the outcome of the proceedings. See Strickland, 466 U.S. at 688. In response to the government's suggestion that there were six participants in the conspiracy, the statement with which Soto-Lara takes issue, the Court stated, "I stand on my findings as already made. There [are] five [participants]. . . ." Tr. at 24. The government's alleged breach did not affect the Court's findings. As such, the Court would have been unlikely to change its findings had counsel objected to this alleged breach.

While the outcome at the sentencing hearing was not affected by the government's actions, the Court's refusal to adopt the government's position does not render the alleged breach harmless if the portion of the plea agreement which Soto-Lara claims was breached induced his guilty plea. Panzari-Alvarez v. United States, 879 F.2d 975, 986 (1st Cir. 1989) (stating that "[t]he government may not breach any term of a plea agreement which induced the defendant to plead guilty"); Correale, 479 F.2d at 949 (noting that when a plea agreement is "broken or meaningless" the rights of the defendant are violated). Nothing in the record indicates that the government's position with regard to Soto-Lara's role in the offense induced Soto-Lara to plead guilty. That Soto-Lara entered into the plea agreement despite disagreeing with the government's position with regard to drug

8

quantity[2] suggests that the government's stated position regarding the role in the offense enhancement did not affect Soto-Lara's decision to plead guilty. The more probable inducement for Soto-Lara's guilty plea was the government's agreement to dismiss Count Two of the indictment and to recommend a three-level reduction in his offense level.

As the outcome of the proceedings remained the same despite the alleged errors committed by counsel, counsel was not ineffective under the <u>Strickland</u> standard. Moreover, the record suggests that the assistance rendered by counsel was quite effective in that counsel properly pressed the Court for clarification as to its findings with regard to Soto-Lara's role in the offense. Counsel would not have reasonably been expected to press further. Accordingly, counsel did not render ineffective assistance by failing to raise the breach of plea agreement argument.

### B. Double Jeopardy

Soto-Lara also claims that his conviction in Massachusetts violates the double jeopardy clause because he had previously been charged in Rhode Island with an offense that was part of the

---

[2] Soto-Lara pled guilty to Count One of the indictment while disputing the government's position with regard to the drug quantity attributable to him as set forth in the plea agreement. Tr. of Change of Plea of Aug. 17, 2001 at 36.

9

same general course of criminal conduct. Pet'r Mem. at 5.

On January 12, 2000, Soto-Lara and Roberto Cruz ("Cruz") were indicted in the District of Rhode Island for conspiring to possess cocaine with intent to distribute and attempting to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. District of Rhode Island Presentence Investigation Report of Aug. 9, 2000 at 1. Their indictment stemmed from events that took place in Warwick, Rhode Island in December 1999 and January 2000. Massachusetts Presentence Report at 6-7. Specifically, Soto-Lara and Cruz were arrested as a result of a reverse sting, in which an undercover agent from the Drug Enforcement Administration agreed to sell to Soto-Lara and Cruz five kilograms of cocaine. Id.

On October 25, 2000, Soto-Lara and three others were indicted in the District of Massachusetts for, among other things, conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Id. at 1-2. In this instance, the indictment stemmed from a series of events that took place in Franklin, Framingham, Rehobeth, Bellingham, Woonsocket, and elsewhere in Massachusetts and Rhode Island from January 1997 until October 2000. Id. at 2.

To decide whether two offenses are the same offense for double jeopardy purposes, courts generally use the "same evidence" test. United States v. Laguna-Estela, 394 F.3d 54, 56

10

(1st Cir. 2005) (indicating that the "same evidence" test devised by the Supreme Court in <u>Blockburger</u> v. <u>United States</u>, 284 U.S. 299, 304 (1932), is used in the majority of double jeopardy cases). "This test ordinarily requires a determination whether each offense requires an element of proof that the other does not." <u>Laguna-Estela</u>, 394 F.3d at 57. The First Circuit has fine-tuned the <u>Blockburger</u> test specifically to address whether two charged <u>conspiracies</u> are the same for double jeopardy purposes. <u>Laguna-Estela</u>, 394 F.3d at 57 (citing <u>United States</u> v. <u>Gomez-Pabon</u>, 911 F.2d 847, 860 (1st Cir. 1990)). When applying this modified test, courts must consider the following five factors: "(a) the time during which the activities occurred, (b) the persons involved, (c) the places involved, (d) whether the same evidence was used to prove the two conspiracies, and (e) whether the same statutory provision was involved in both conspiracies." <u>Laguna-Estela</u>, 394 F.3d at 57.

While both conspiracy charges were brought under the same statutory provisions, and while it is possible, although uncertain, that both conspiracies occurred over the same general time period and in the same general vicinity, Soto-Lara has not shown that the charges brought against him in Massachusetts are the same as those to which he already pled guilty in Rhode Island. The overlapping here "does not belie the separateness of the conspiracies" as established by the other factors. <u>United</u>

11

States v. Hart, 933 F.2d 80, 86 (1st Cir. 1991).

First, the individuals involved in the two conspiracies are different. Of the four defendants indicted in the Massachusetts case and the two defendants indicted in the Rhode Island case, Soto-Lara was the only party common to both indictments. Moreover, the record does not indicate that the other participants in each conspiracy had any knowledge of, or interest in, the activities of the other. Second, and perhaps more importantly, the evidence used to support each of the two conspiracies is distinct. The data supporting the Rhode Island conspiracy consisted exclusively of the reverse sting in Warwick, Rhode Island. Massachusetts Presentence Report at 6-7. The data supporting the Massachusetts conspiracy, however, consisted of an extensive investigation conducted by the Drug Enforcement Administration which included incriminating testimony from multiple individuals, none of whom were implicated in the Rhode Island conspiracy. Id. at 4-5, 7-13.

Upon weighing these five factors outlined above, and upon considering the totality of the circumstances presented by this case, this Court concludes that Soto-Lara's double jeopardy claim is without merit. As counsel is not required to raise meritless arguments, counsel neither erred nor rendered ineffective assistance by failing to object to Soto-Lara's Massachusetts conviction on double jeopardy grounds.

### III. CONCLUSION

Both the breach of plea agreement claim and the double jeopardy claim lack merit. Failing to raise such meritless claims is not objectively unreasonable and therefore does not constitute ineffective assistance of counsel. Accordingly, Soto-Lara's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.§ 2255 [Docket No. 1] is DENIED.

SO ORDERED.

/s/ William G. Young

_____

WILLIAM G. YOUNG
CHIEF JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V. )<br>)<br>ALBERTO SOTO-LARA, )<br>)<br>Defendant ) | Crim. No. 00-10385-WGY |

### DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT

Defendant objects to the Presentence Report as follows:

(4) - (9) **OBJECTION:** Defendant denies that he was the source of the one kilogram of cocaine delivered by Junior Carmona in Framingham on March 30, 1999 or that co-defendants Lopez-Fernandez and Garcia-Castro were drug distributors for him (para. (5) ). He further states that Carmona worked for him at the Tesoro Market in Woonsocket, Rhode Island and was paid both directly and at times by having his rent paid by defendant. Defendant admits that Carmona delivered drugs for him sometimes and collected money for same, but denies that he exercised control or supervision over him. See Affidavit of Alberto Soto-Lara, a true copy attached.

(12) **OBJECTION:** Defendant states that Carmona only worked with him between seven and nine months from the summer of 1998 until March, 1999 and that during that time he only delivered an approximate total of .72 kilogram of cocaine. See defendant's Affidavit.

(13) **OBJECTION:** Defendant denies that "Polo" (Lopez-Fernandez), "Charlie" (Garcia-Castro) or anyone named "Ramon" worked for him in the drug business.

(22) **OBJECTION:** Defendant denies that "Polo" (Lopez-Fernandez), or "Charlie" (Garcia-Castro) worked for him in the drug business.

(23) **OBJECTION:**  Defendant denies he sold cocaine directly to Edward DiLegge at any time.

(28) **OBJECTION:**  Defendant denies he was "clearly in charge of the operation." He also denies he was "Charlie's" boss or that he made "all decisions" for him.

(29) **OBJECTION:**  Defendant denies saying to DiLegge that the latter was producing a lot of money for him and he wanted to ensure that he was satisfied with the cocaine.

(35) **OBJECTION:** Defendant denies that the 250 grams of cocaine delivered to the St. Jacques' residence on or about September 11, 2000 were his or were delivered on his behalf.

(37) **OBJECTION:** Defendant denies that Louis Asermely "served as a cocaine broker" to James St. Jacques for him. Defendant admits selling some cocaine to Asermely but had no control over who he, in turn, sold it to. Defendant notes that Asermely has known St. Jacques "all his life" and that both are cooperating with the government to furnish evidence against him. Defendant suggests that Asermely was likely the subject of an investigation by law enforcement into illegal drug trafficking in Rhode Island and that that is a reason for his cooperation as well as a desire to help St. Jacques who is also apparently facing murder charges in Rhode Island.

(38) **OBJECTION:** Defendant denies he sold a total of 15 kilograms to Asermely. He recalls selling 125 grams approximately 7 times, 250 grams approximately 6 times and 375 grams one time, to Asermely, for a total of approximately 2.750 kilograms.

(41) **OBJECTION:** Defendant objects to both the alleged frequency of his sales to Asermely and over what period of time. He does not recall specifically when he met Asermely.

(42) **OBJECTION:** Without more specificity defendant can not admit nor deny that the sale referred to was one he admits doing with Asermely.

2

(43) **OBJECTION:** Defendant objects to the characterization of any cocaine that Asermely might have sold to James St. Jacques as the defendant's. If any of his sales to Asermely ended up being resold to St. Jacques that was not his decision. See also paragraph (37) above regarding the likely collusion between St. Jacques and Asermely against the defendant.

(45) **OBJECTION:** Defendant denies selling cocaine directly or indirectly to Richard Pantano.

(46) **OBJECTION:** Defendant does not believe he ever met Richard Pantano and denies that he ever discussed the quality of cocaine with Richard Stevens or that the latter sold cocaine for him.

(49) **OBJECTION:** Defendant denies that he sold cocaine directly or indirectly to Richard Stevens.

(50) **OBJECTION:** See (49) above.

(51) **OBJECTION:** See (49) above.

(58) **OBJECTION :** Defendant admits he could be responsible for 720 grams to Carmona and 2,750 grams to Asermely but denies all other quantities except regarding the January 5, 2000 arrest for which he has already been sentenced. Regarding that sale defendant believes he should only be responsible for the pro rata amount that he actually had the money to purchase. The purchase price was $16,000 but defendant only had $7,228.40 on his person when he was arrested. That calculates to approximately 11% of the purchase price. 11% of the four kilograms would be 440 grams.

TOTAL: Defendant should be responsible for 720 + 2,750 + 440 = 3910 grams.

(60) **OBJECTION:** Defendant's base offense level should be 30 based on 3.910 kilograms.

**(62) OBJECTION:** Defendant neither led nor organized a cocaine distribution organization. He sold cocaine wholesale to a few distributors to supplement his otherwise legitimate income from running the Tesoro Market convenience store. The Presentence Investigation Report in the Rhode Island case from the United States District Court of Rhode Island indicated that defendant had filed tax returns for 1997 and 1998 for approximately $6,000 and $10,000 respectively. In addition, see Affidavit of Juan Torbi, attached hereto, regarded likely 1999 income. See also copies of defendant's 1999 and 2000 federal tax returns indicating income of $12,586 and $13,424. respectively. Defendant notes Mr. Torbi ran the business while defendant was incarcerated in 2000 and in fact eventually purchased it. Defendant also received several thousand dollars from a personal injury lawsuit settlement in or about 1997 and will try to produce documentation of same for sentencing.

There should be no upward adjustment for role in the offense as all the government witnesses are very unreliable due to their criminal backgrounds and interest in obtaining favorable treatment because of their cooperation.

**(65) OBJECTION:** The Adjusted Offense Level should be 30 not 36.

**(67) OBJECTION:** The Total Offense Level should be 27 not 33.

**(144) OBJECTION:** The applicable minimum mandatory sentence should be 5 not 10 years based on more than 500 but less than 5,000 grams of cocaine.

**(145) OBJECTION:** The applicable guideline range for level 27 criminal history category III is 87 - 108 months. Defendant has been in federal custody for 25 months, thus the resulting guideline range after deducting same from both ends is 62 - 83 months.

**(163) OBJECTION:** Defendant believes that a downward departure is warranted based on his alien status and the certainty that he will be subjected to harsher conditions of incarceration when

he is sentenced on the instant offense than if he were a U.S. citizen. See copy of defendant's motion for downward departure, attached.

Respectfully submitted,<br>
**Alberto Soto-Lara,**<br><br>
By his attorney,<br><br>
Raymond E. Gillespie<br>
B.B.O. #92300<br>
875 Massachusetts Ave   suite 32<br>
Cambridge   MA   02139<br>
(617) 661-3222

February 18, 2002

object.psr

I certify that I served this document by mailing / hand delivery of a copy of same to all counsel of record (or pro se parties) on 2/18/02

5